## Case No. 3,032.

### COLT v. YOUNG et al.

#### [2 Blatchf. 471.][1]

Circuit Court, S. D. New York. Nov. 18, 1852.

EXTENSION OF PATENT—CONCLUSIVENESS OF COMMISSIONER'S DECISION—FRAUD — ENJOINING INFRINGEMENT.

1. Where an application for the extension of a patent under section 18 of the act of July 4, 1836 (5 Stat. 124), was pending at the time of the passage of the act of May 27, 1848 (9 Stat. 231), which conferred upon the commissioner of patents alone the same authority to extend patents which had previously been confided to the board created by the act of 1836: Held, that it was not necessary to renew the application, but that the commissioner was authorized to go on with the proceedings, as having been properly instituted, and complete them by granting the extension.

2. Where the commissioner of patents has jurisdiction over an application for the extension of a patent, his decision is conclusive as to the regularity of the proceedings on the extension. The only exception to the conclusiveness of his decision is, perhaps, the case of fraud.

[Cited in Goodyear v. Providence Rubber Co., Case No. 5,583.]

3. The defendant was enjoined, before final hearing, from infringing two of the claims of a patent, although it was not held that another claim in the same patent, the novelty of which was disputed, was valid.

In equity. This was a motion [by Samuel Colt] for a provisional injunction, to restrain the defendants .[Hiram Young and Edward Leavitt] from infringing the first, second, and third claims of letters patent granted to the plaintiff, February 25th, 1836, for an "improvement in fire-arms," as re-issued to him, on an amended specification, October 24th, 1848 [No. 124], and extended by the commissioner of patents on the 10th of March, 1849, for seven years from the 25th of February, 1850. There were five claims in the amended specification. The bill set out a recovery by the plaintiff in a suit at law on the patent, in the circuit court for the Massachusetts district, which was strongly defended, and in which the jury found specially the novelty of the plaintiff's patented combination, and the infringement of the first three claims of his patent. In opposition to the motion, the defendants set up want of novelty in the plaintiff's patent, illegality in its extension and non-infringement. The affidavits were principally directed to the point of showing a want of novelty in the first claim.

[The defendants herein had heretofore filed a cross bill, denying invention, setting up the illegal reissue and extension of the patent, and averring that the complainant had assigned his interest therein to the Massachusetts Arms Company. Complainant demurred to the cross bill, and the demurrer was sustained. Young v. Colt, Case No. 18,155.]

Edward N. Dickerson and Charles M. Keller, for plaintiff.

Seth P. Staples, Francis B. Cutting and Robert Emmet, for defendants.

Before NELSON, Circuit Justice, and BETTS, District Judge.

NELSON, Circuit Justice (after holding that the evidence produced on the part of the defendants in no manner affected the plaintiff's second and third claims, and that the defendants had infringed those claims). The next question in the case is as to the validity of the extension made by the commissioner on the 10th of March, 1849. By the 18th section of the patent act of July 4, 1836, (5 Stat. 124), the power to hear and determine applications for the extension of patents was conferred upon a board composed of the secretary of state, the commissioner of patents and the solicitor of the treasury. That act required public notice to be given of the application a certain number of days previous to the hearing. By the act of congress of May 27, 1848 (9 Stat. 231), it is enacted, that "the power to extend patents now vested in the board composed of the secretary of state, commissioner of patents and solicitor of the treasury," "shall hereafter be vested solely in the commissioner of patents;" and it is further provided, that the said commissioner shall exercise the powers "upon the same principles and rules that have governed said board."

The application for an extension of the patent before us was pending when the act of 1848 was passed, and the commissioner, after its passage, went on with the proceedings, as having been already properly instituted, and completed them by granting an extension. The argument against its validity is, that the proceedings fell with the modification of the board by the act of 1848; and, therefore, that it was necessary to begin them anew, observing the preliminary steps necessary in such cases. The obvious answer is, that this was not a repeal of the section providing for the extension of patents, and the enactment of a new system for the purpose; in which case, the principle of construction contended for would have been applicable (U. S. v. Boisdore's Heirs, 8 How. [49 U. S.] 113), but simply a repeal of so much of it as related to the action of the secretary of. state and the solicitor of the treasury in the matter, leaving the commissioner alone to go on in the execution of the duty. This is, the legal as well as the common-sense understanding of the change produced by the act of 1848. The amendment seems guardedly worded, for the purpose of avoiding the great inconvenience, if not injustice, that might result to applicants, if the construction contended for by the defendants should prevail, namely, the necessity of renewing the applications, with sixty days' public notice. It, therefore, simply devolves upon the commissioner, after its passage, the whole of the duty which was previously di-

[1][Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

alleged necessity of inserting the disallowed items of credit so great as to invalidate the account as testimony if such credits were omitted, how can this court exclude it because the allowed items of credits are not inserted? In truth, no such necessity exists. The whole of the items are based upon the party's own quarterly returns. Under the law, the accounting officer adjusts them; and the party, if aggrieved. is allowed twelve months within which to appeal to the controller general from such adjustment. The quarterly returns themselves. where any items are disallowed. are, by the regulations of the department and the law, to be transmitted to the postmaster. It is to be presumed, in the absence of all testimony to the contrary, that the officer did his duty; that the benefit of the appeal was extended to the party in this as in every other case; and that the quarterly returns, if any credits had been disallowed, have been transmitted as adjusted to the party. Again, the debit side of this account is based upon quarterly returns made by the party himself. and furnished to the department. They are necessarily made at the end of each quarter, from the books of the post-office. If he does not know to what credits he is entitled. who does? Yet it is on this ground. viz., that this information should be conveyed to him, on the face of the account, that the court is asked to exclude the testimony as incompetent. If there has been any error in the adjustment of his quarterly returns, and the party has omitted to avail himself of his right of appeal, or the exercise of it has proved fruitless, he could have compelled for correction the production of them by notice. as was done in the case of Hoyt v. U. S., 10 How. [51 U. S.] 109. If not produced, he could have availed of his legal rights, and obtained any credit to which he was entitled, and which had been improperly disallowed; or prove error in any item with which he had improperly charged himself in his quarterly returns; or lastly, have established his claim to any credits not previously preferred for some reason, for which the act of congress dispensed with previous presentation. It has not been brought to the notice of the court that the officers of the department have been derelict in their duty: that the party has not been furnished with his adjusted quarterly returns; or to what items of credit the party is entitled which have been disallowed. Had such showing been made. this court. under the discretion confided to it by the act of congress. would have given such direction to this case as would have placed the defendant in the position the law presumes him now to occupy in the absence of any such showing.

If this testimony is competent. is it sufficient to sustain the present action? It would seem that where the law makes testimony competent, it is prima facie evidence of a fact, and becomes satisfactory in the absence of all other. Such evidence throws the burthen on the opposing party; and if no opposing evidence is offered, the jury are bound to decide in favor of the presumption. A contrary verdict would be set aside. 1 Greenl. Ev. § 33. But the act of congress under which this evidence is admitted, distinctly defines its sufficiency: "A statement of the account, certified as aforesaid. shall be admitted; and the court trying the same shall be thereupon authorized to give judgment and execution," &c. What statement is here meant? Certainly the statement previously mentioned. Whether the admissibility of this transcript of account be viewed under the construction of the treasury act of March 3, 1797; or under the more stringent provisions of the post-office act of July 2. 1836, there can be no doubt upon the point. The objection to its competency and its satisfactory character. in the absence of all counter-testimony, must be overruled.